UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re:                                                          :
                                                                :
KENNETH SHIHAI AND YIEN KOO KING,        :        Chapter 7
                                                                :        Case No. 07-13907 (MG)
                                                                :
                                         Debtors.      :
                                                                :
---------------------------------------------------------------x

# MEMORANDUM OPINION AND ORDER DENYING FINAL APPLICATION BUT GRANTING INTERIM APPLICATION FOR ALLOWANCE OF FEES AND DISBURSEMENTS

**A P P E A R A N C E S:**


DUFFY & ATKINS LLP
Seven Penn Plaza, Suite 420
New York, New York 10001
By:  James Atkins
*Attorneys for Petitioners*

DIANA G. ADAMS
UNITED STATES TRUSTEE
33 Whitehall Street, 21st Floor
New York, New York 10004
By:  Serene Nakano

SILVERMAN ACAMPORA LLP
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
By:  Ronald J. Friedman
*Attorneys for Marianne T. O'Toole, the Chapter 7 Trustee*

**MARTIN GLENN**
**United States Bankruptcy Judge**

## INTRODUCTION

Duffy and Atkins LLP ("D&A"), counsel for the debtors and debtors in possession prior to conversion of this case from chapter 11 to chapter 7 on May 28, 2008, filed their first and final application for compensation for the period from December 11, 2007 to and including May 7, 2008 ("Fee Application") on May 27, 2008. (ECF Doc. # 58.) In its application it sought final approval of $46,115.00 in fees and $1,329.03 in expenses. (ECF Doc. #58.) The original hearing on the motion was scheduled for July 17, 2008 but was adjourned when the United States Trustee ("UST") filed an objection. (ECF Doc. # 77.) The hearing on the matter was held on July 23, 2008 with the UST and the chapter 7 trustee appearing in opposition. For the reasons stated below and in the Court's oral ruling on July 23, the priority and distribution requirements in Bankruptcy Code § 726 require that D&A's final fees and expenses in a case converted from chapter 11 to chapter 7 be subordinated to the chapter 7 trustee's fees and expenses, and payment delayed until higher priority claims can be ascertained. Therefore, D&A's Fee Application has been treated by the Court as an interim fee application and approved in the amount of $15,000, received by D&A as a prepetition retainer.

## BACKGROUND

Kenneth Shihai and Yien Koo King (the "Debtors"), while represented by D&A, filed a voluntary petition for relief under chapter 11 on December 11, 2007. (ECF Doc. # 1.) On December 25, 2007, D&A filed its statement of compensation paid or agreed to be paid pursuant to FED. R. BANKR. P. 2016(b) and Bankruptcy Code § 329 ("Rule 2016 Statement"). (ECF DOC. # 8.) The Rule 2016 Statement listed a $15,000 retainer under the subsection titled "The

2

compensation paid or agreed to be paid by the debtor to the undersigned is . . . ." (*Id.*) The Rule 2016 Statement lists the amount paid as $0.00 and the amount still owed under the retainer as $0.00. (*Id.*) In the declaration submitted with the Rule 2016 Statement, there was no clarification whether the retainer mentioned as "having been paid or agreed to be paid" had in fact been received by D&A or had just been agreed to by the Debtors.

On January 10, 2008, the retention motion for D&A as Debtors' counsel was filed. (ECF Doc. # 15.) The retention motion does not include a reference to either the $15,000 retainer or the Rule 2016 Statement. (*Id.*) The retention motion's discussion of compensation states in relevant part (i) the firm's intention to comply with the relevant Code sections including §§ 328, 330, and 331; and (ii) the intention of the Debtors to pay D&A's customary hourly rates from time to time. (*Id.*) On January 15, 2008, an order was entered authorizing D&A's retention. (ECF Doc. # 16.) The initial case conference was held in February 2008 at which several creditors appeared to voice their concerns regarding the Debtors' chapter 11 filing. The Debtor's monthly operating statement for the period from December 11, 2007 to January 31, 2008 ("Operating Statement") was filed on February 16, 2008, but did not reflect any disbursements to D&A. (ECF Doc. # 20.) A creditor, Philips Nizer, filed a motion for relief from the automatic stay in March 2008, and the New York County Public Administrator filed a motion for relief from the automatic stay in April 2008. (*See* ECF Docs. # 25, 30.) The Philips Nizer motion was denied without prejudice on May 28, 2008. The Public Administrator's motion was granted on April 17, 2008. D&A sought approval to withdraw as Debtors' counsel on April 11, 2008,[1] while the two motions for relief from the automatic stay were pending. (ECF Doc. # 33.) The

---

[1] The motion to withdraw was based on 22 N.Y. COMP. CODES R. & REGS. tit.22, § 1200.15 ("other conduct renders it unreasonably difficult for the lawyer to carry out employment effectively").

3

motion to withdraw was granted on April 17, 2008 but was not effective until May 7, 2008. (ECF Doc. # 41.)

Shortly after D&A was granted leave to withdraw as counsel, the firm filed its Fee Application seeking final compensation for all of the work performed on the case. (ECF Doc. # 58 at ¶ 10.) The Fee Application sought payment of fees totaling $46,115.00, and expenses totaling $1,329.03. (*Id.*) In the Fee Application, D&A references the retainer received and states that the $15,000 had been maintained in D&A's client escrow account. The Fee Application requested that the Debtors be directed to pay the amounts previously not paid. (*Id.*) On May 28, 2008, the UST's motion to convert the chapter 11 case to a case under chapter 7 was granted. (ECF Docs. # 47, 59.)

UST Objection

The UST objects to D&A's Fee Application being treated as a final fee application based on two alternative grounds — (i) D&A's failure to properly disclose the retainer[2] and (ii) the priority and distribution requirements of Bankruptcy Code § 726, subordinating D&A's claim to the chapter 7 trustee's claim, which has not been fully estimated. The UST argues that because the estate assets are uncertain and the amount of administrative expense necessary to administer the estate still unknown, the estate should not make payments to lesser priority claims before ensuring administrative solvency.

The first objection is based on D&A's failure to adequately disclose the receipt of a retainer of $15,000 and the source of those funds. Pointing to the Rule 2016 Statement, the Operating Statement, the Retention Motion, and the Fee Application, the UST argues that D&A

---

[2] Because the Court finds under Bankruptcy Code § 726 that it is appropriate to treat the current fee application as an interim application and objections to compensation will be heard at a later date, the Court need not resolve at this time issues regarding the adequacy of the disclosures. A discussion of this issue is included only for the purposes of providing an accurate description of the objection.

4

did not adequately disclose the retainer. The UST alleges that the Rule 2016 Statement states that the retainer has not been paid. As a result, the UST argues the current application should not be treated as a final application but instead as a request for interim compensation. D&A, however, argues that the retainer was disclosed in its Rule 2016 Statement. The Rule 2016 Statement is unclear because it lists the amount to be paid or already paid as $15,000, and then separately lists the amount paid as $0.00 and the amount still owed as $0.00. (ECF Doc. # 8 at ¶ 2.) The Rule 2016 Statement also states that the source of the payment was the Debtors' earnings, wages and compensation for services performed. (*Id*. at ¶ 4.) The supplemental declaration filed by the UST attaches a $15,000 canceled check payable to D&A drawn on the account of Ms. Lynn King, the Debtors' daughter. (ECF Doc. # 80, 81.) The chapter 7 trustee is conducting an investigation to determine whether the Debtors or their daughter were the source of the retainer.

      The UST argues that the lack of disclosure is a sufficient basis to treat the Fee Application as one for interim compensation. However, the UST did not object to the payment of the retainer to D&A (from its client escrow account) as the UST recognizes the amount may not be property of the estate. (ECF Doc. # 77.)

      The UST's second argument is based on the priorities and distribution requirements set forth in Bankruptcy Code § 726. 11 U.S.C. § 726. According to the UST, § 726 requires that D&A's fees and expenses be subordinated to the chapter 7 trustee's fees and expenses and as such delayed until those higher priority expenses can be ascertained with more certainty.

      The UST expressly reserved its right to object to the retainer and to seek disgorgement at the final hearing.

**DISCUSSION**

**A. Timing and Priority of Estate Distributions**

Section 726 of the Code specifies the priority of estate distributions in a chapter 7 case. 11 U.S.C. § 726. Although the priority of distributions in a chapter 7 case is clearly set forth in the Code, the requirements bear a detailed analysis given the numerous cross references and exceptions involved. In relevant part § 726(a) states that the first distributions from estate property are to those granted priority pursuant to § 507 of the Code. 11 U.S.C. § 726(a)(1). Section 507(a)(1)(C) in turn lists as superpriority claims certain chapter 7 trustee administrative expenses enumerated in § 503(b)[3] related to costs of preserving the estate, compensation awarded under § 330 (primarily trustee, examiner and professional fees) and fees and mileage under chapter 119 of title 28. See 11 U.S.C. § 507(a)(1)(C); 4 COLLIER ON BANKRUPTCY ¶ 507.02 (15th ed. rev. 2008). The superpriority status applies to trustees appointed pursuant to certain Code sections, including §§ 701, 702, 703, 1104, 1202, and 1302. *Id.* After payment of these expenses, distributions from the estate can be made to the second priority claims under § 507(a)(2), including the remaining administrative expenses permitted by § 503(b). Because this case was converted from chapter 11 to chapter 7 pursuant to § 1112(b),[4] § 507(a)(2) rather than § 507(a)(1)(C) determines the priorities for distribution.

Section 507(a)(2) states in relevant part that administrative expenses allowed under § 503(b) and any fees and charges assessed against the estate under chapter 123 of title 28 are given second priority. 11 U.S.C. § 507(a)(2). Section 503(b) describes nine general, nonexclusive categories of claims entitled to administrative expense status, including in relevant

---

[3]    Section 507(a)(1)(C) specifically references the administrative expenses allowed pursuant to §§ 503(b)(1)(A), 503(b)(2), and 503(b)(6).

[4]    See Order entered converting case at ECF Doc. # 59.

6

part, the actual, necessary costs and expenses of preserving the estate and compensation and reimbursement awarded under § 330(a). 11 U.S.C. §§ 503(b)(1)(A), 503(b)(2); 4 COLLIER ON BANKRUPTCY ¶ 503.05. These second priority expenses include the administrative expenses incurred pursuant to § 330 for the compensation of professionals retained pursuant to § 327, including professionals retained by a trustee or a debtor in possession. 11 U.S.C. § 330(a)(1). However, this equality of professionals is not long-lived as § 726(b) states that the payment of claims allowed under § 507(a) shall be made *pro rata* among claims of a kind specified in § 507 except in a case that has been converted to a case under chapter 7 pursuant to § 1112. 11 U.S.C. § 726(b). In a converted case a claim allowed under § 503(b), including all the actual, necessary costs and expenses of preserving the estate and professional compensation or reimbursement, incurred after the conversion has priority over a claim allowed under § 503(b) incurred before the conversion. The § 726(b) exception subordinates claims by preconversion professionals retained pursuant to § 327 that are otherwise entitled to administrative expense status for fees pursuant to § 330(a) and § 503(b) to chapter 7 trustee postconversion expenses.

Because D&A's fees are subordinated pursuant to § 726(b), the Court denies the application for final compensation and instead approves fees and expenses only on an interim basis and only to the extent of the prepetition retainer. Denial is appropriate for several reasons.

The timing of distributions for administrative expense payments, other than at the close of the case, is within the discretion of the Court. *Varsity Carpet Serv., Inc. v. Richardson (In re Colortex Indus., Inc.)*, 19 F.3d 1371, 1384 (11th Cir. 1994) (holding that due to the existence of higher priority claims, it was within the discretion of the court to delay payment of administrative expenses); *Spartan Plastics v. Verco Indus. (In re Verco Indus.)*, 20 B.R. 664, 665 (B.A.P. 9th Cir. 1982) ("The determination of when an administrative expense is to be paid is

7

within the discretion of the trial court."); *see also Local 144 Hosp. Welfare Fund v. Baptist Med. Ctr of New York, Inc. (Matter of Baptist Med. Ctr of New York, Inc.)*, 52 B.R. 417, 421 (E.D.N.Y. 1985) (recognizing *Verco* as standing for the proposition that the court is not required to allow immediate payment of administrative expenses); *In re Chi-Chi's, Inc.*, 305 B.R. 396, 401 (Bankr. D. Del. 2004) (denying immediate payment of administrative expenses finding that administrative expenses may be delayed when the estate may not be able to pay all administrative expenses in full or based on other factors).  Courts have also held that the court's discretion as to the timing of administrative payments should be used to ensure the "orderly and equal distribution among creditors and the need to prevent a race to a debtor's assets," especially if there is a doubt as to the administrative solvency of the debtor overall.  *In re Chi-Chi's, Inc.*, 305 B.R. at 401 (quoting *In re HQ Global Holdings, Inc.*, 282 B.R. 169, 173 (Bankr. D. Del. 2002)); *In re LTV Steel Co.*, 288 B.R. 775, 779 (Bankr. N.D. Ohio 2002) (denying immediate payment of administrative expenses because the Bankruptcy Code does not require it and instead requires parity amongst administrative claims); 4 COLLIER ON BANKRUPTCY ¶ 503.03.

In addition, although not explicitly prohibited, payment of subordinated claims before an estate has been fully administered or at least estimated to ensure that the superpriority claims can be paid in full goes against the legislative goals of § 726.  The priority scheme requiring the superpriority of postconversion fees and expenses is a means to ensure that capable trustees and professionals will administer a converted case.  *In re Codesco, Inc.*, 18 B.R. 225, 227 (Bankr. S.D.N.Y. 1982) (preconversion attorneys were not accorded the same priority as the chapter 7 administrative expenses), *abrogated on other grounds by In re Croton River Club, Inc.*, 162 B.R. 656 (Bankr. S.D.N.Y. 1993); 6 COLLIER ON BANKRUPTCY ¶ 726.03.  If recoveries for postconversion professionals were subject to dilution based solely on the timing of preconversion

8

professional fee applications, the Code's priorities would be undermined, making payments to postconversion professionals a function of timing rather than the edicts of the Code.

In *Codesco,* the preconversion debtor's counsel sought disbursements based on its fees prior to the final resolution of the case. *In re Codesco, Inc.*, 18 B.R. at 227. The court stated that the chapter 7 trustee's administrative expenses had to be paid ahead of the administrative expenses attributable to the chapter 11 case. *Id.* The debtor's counsel, however, argued that the superpriority expenses did not preclude the payment of their fees because § 726(b) applies superpriority status to all legal services performed in the course of liquidating the debtor's assets. *Id.* Based on the plain meaning of § 726(b) and the policy behind it, the court rejected this argument. *Id.*

> The superpriority status for the so-called 'burial expenses' after the conversion was intended to provide an incentive to encourage capable trustees and professionals to act in superseding cases. This purpose would be negated if liquidating administrative expenses of an aborted Chapter 11 case could also qualify for super-priority status in a converted Chapter 7 case.

*Id.* The court stated that superpriority status was expressly limited to administrative expenses incurred solely under the chapter 7 case after conversion. *Id.* at 228. In addition to the policy of priority designations, distributions made prior to some determination or evaluation of the funds available in a chapter 7 estate would also increase the likelihood of uneven distributions within a particular class of creditors contrary to the goals of the Code. *See* 11 U.S.C. § 726(b); *In re Kingston Turf Farms, Inc.,* 176 B.R. 308, 309 (Bankr. D.R.I. 1995) (disgorging fees awarded to allow estate to make *pro rata* distribution).

Other cases have found the subordination of chapter 11 administrative expenses under § 726(b) sufficient grounds to withhold payments to preconversion professionals or even disgorge payments previously made. As discussed earlier, the court in *Codesco* found the prepetition

9

professional fees ineligible for payment prior to the payment of the chapter 7 trustee's administrative expenses. *In re Codesco*, 18 B.R. at 227; *see also In re Jonick Deli Corp.*, 263 B.R. 196, 198 (S.D.N.Y. 2001) (*dicta*) (concluding that "when a Chapter 11 case is converted to a Chapter 7 case, the exception in § 726(b) provides that Chapter 7 administrative expenses have priority over previously incurred Chapter 11 administrative expenses"). In other cases, courts have gone further and required the disgorgement of previously allowed or disbursed payments. *In re Household Merit*, 1996 Bankr. LEXIS 1910 (Bankr. N.D.N.Y. Feb. 5, 1996) (requiring retainer held by a preconversion attorney that related to postpetition activity be turned over to the chapter 7 trustee as property of the estate pursuant to § 726(a)); *In re Rittenhouse*, 76 B.R. 610, 611 (Bankr. S.D. Ohio 1987) (found estate monies held for attorney fees should be turned over to pay chapter 7 trustee expenses despite the administrative expense status of the preconversion attorney fees).

In *In re Household Merit,* a fee application case, the court addressed the treatment and interpretation of prepetition retainers received preconversion. *In re Household Merit*, 1996 Bankr. LEXIS 1910. In *Household*, the UST and chapter 7 trustee objected to the allowance of fees and argued that the retainers held by the professionals should be disgorged because of the likelihood that the retainers were the only assets from which administrative expenses could be paid. *Id.* The court found the preclusion of recoveries by other estate creditors, including the chapter 7 administrative expenses, due to the retention by certain professionals of preconversion retainers to be unfair and limited the professionals' security interests in the retainers to the prepetition fees. *Id.* at *27-28. The court then ordered that the remaining funds be disgorged for distribution in accordance with § 726(b). *Id.* at *28.

10

In *In re Rittenhouse*, the debtor's attorney received a payment from the debtor, which was held in a trust to be applied to attorney fees upon the approval of the court. *In re Rittenhouse*, 76 B.R. at 610-611. Counsel claimed that the funds held in the trust were postpetition administrative expenses in the chapter 11 proceeding and should be given priority classification among claims. *Id*. at 611. The court rejected this argument and stated that § 726(b) provides postconversion chapter 7 administrative expenses superpriority relative to the priority position of the chapter 11 administrative expenses. *Id*. The court then ordered the debtor's attorney to turn over the amount held in the trust, stating that the court would review the application for the chapter 11 attorney fees, which were subordinate to the chapter 7 administrative expenses, after the completion of the liquidation. *Id.* at 611-12.

In *In re Kingston Turf Farms, Inc.*, the court faced an administratively insolvent chapter 7 estate that had previously awarded attorneys' fees to the debtor's preconversion professionals. *In re Kingston Turf Farms,* 176 B.R. at 309. Based on the estate's inability to pay 100% of the remaining chapter 11 administrative expenses, the chapter 7 trustee sought the disgorgement of the fees awarded. *Id.* As a result of the estate's inability to provide a *pro rata* distribution to claims of the same priority after the estate had been fully administered, the court ordered the disgorgement of the fees to allow the even distribution required by §726(b). *Id.* at 310. In its decision permitting the disgorgement, the court acknowledged that the prior allowance of fees had been premature and unwise. *Id.*

Based on the above priority requirements and the current status of this chapter 7 case, as one that has not been fully administered, the Court finds the final Fee Application related to preconversion administrative expenses to be premature. The Court will address the preconversion fees when the final estate can be adequately measured and distributions can be

11

made. Until that time, the interim compensation awarded is without prejudice to any objections that can be made as the estate is administered and investigated, and the compensation is subject to later possible disgorgement.

**B. Retainers and Property of the Estate**

In this case it is unclear what type of retainer the parties intended. Whether a retainer is property of the estate or subject to disgorgement is a function of the intention of the parties and state law. Retainer agreements fall into three different categories: (1) classic retainers; (2) security retainers; and (3) advance payment retainers. *Barron v. Countryman*, 432 F.3d 590, 595-96 (5th Cir. 2005); *In re McDonald Bros.*, 114 B.R. 989, 997-98 (Bankr. N.D. Ill. 1990). A "classic" retainer secures an attorney's availability over a certain period of time as opposed to being compensation for services rendered. *Barron*, 432 F.3d at 595; *In re McDonald Bros.*, 114 B.R. at 997-98; *S.E.C. v. Towers Fin. Corp.*, 1993 WL 276935, at * 4 (S.D.N.Y. July 21, 1993). When a classic retainer is paid, the attorney earns the entire amount and the client retains no interest in the funds. *In re McDonald*, 114 B.R. at 998. Because the debtor retains no interest in the retainer, the retainer does not become property of the estate or require a fee application to use the funds. *Id*. at 998-99. Although a classic retainer falls outside the Bankruptcy Code § 330 requirement, it is subject to disclosure and reasonableness review under § 329. *Barron*, 432 F.3d at 595.

A "security" retainer is a payment made to an attorney to secure payment of fees for prospective services. *Id.; In re McDonald*, 114 B.R. at 999. The debtor retains an interest in the funds until services are rendered by the attorney. *Barron*, 432 F.3d at 595. The attorney merely "holds" the funds until services are rendered, and is required to turn over any remaining balance to the debtor. *Id*. Since the debtor retains an interest in the retainer, such a retainer is the

12

property of the estate, and is subject to use by counsel upon compliance with §§ 329 and 330. *Id.* at 1000-01.

The last type of retainer is the "advance payment" retainer. This type of retainer involves fees paid to an attorney for services to be rendered, but the payment passes to counsel upon remittance at which time the debtor relinquishes all interest in the monies, unless there is an express agreement for the payment to be held in a trust or escrow. *Id.* at 1000-02. Funds that are collected as advance retainers do not become property of the estate and are subject to the requirements of § 329 only. *Barron*, 432 F.3d at 596.

"In order for a prepetition retainer held by debtor's counsel to be property of the estate, the debtor must have some interest in the retainer itself at the time the petition is filed." *In re McDonald*, 114 B.R. at 996 (citations omitted). The Supreme Court has made it clear that state law governs the definition of property rights in the assets of a bankrupt estate. *Butner v. U.S.*, 440 U.S. 48, 54 (1979). State law not only governs ownership interest, but also applies equally to security interests. *Id.* at 55. Hence, this Court must look to New York law to determine if a retainer is property of the debtor's estate.

The New York State Bar Association Committee on Professional Ethics, Opinion 570 (1985) states that attorneys may agree with their clients to treat fee advances as client funds by depositing those funds in a client's trust account. *In re D.L.I.C., Inc.*, 120 B.R. 348, 351 (Bankr. S.D.N.Y. 1990). Absent such an agreement, an attorney may deposit advance fee payments in its general trust account. *Id*. In New York, these advance payments may be treated as fees belonging to the attorney upon transfer. *Id.* (citing Lester Brickman, *The Advance Fee Payment Dilemma: Should Payments Be Deposited to the Client Trust Account or to the General Office Account*, 10 CARDOZO L. REV. 647 (1989)). Ultimately, the question is "whether or not the

13

specific retainer was intended by the parties as a security retainer, which may be property of the estate, or an advance payment, which belongs to the attorney and is not property of the debtor client's estate." *Id.*

With respect to the $15,000 retainer in this case, neither the UST nor the chapter 7 trustee has requested its disgorgement, and D&A has not argued that the retainer is not property of the estate and subject to disgorgement. During the July 23, 2008 hearing, the parties agreed that for purposes of an interim fee application, the parties would regard the $15,000 retainer as an advance payment retainer and reserve any additional arguments for a final fee hearing, if necessary. In addition, since the estate has not been fully administered or found administratively insolvent, the Court is not required at this time to determine whether distributions comply with § 726. If the estate turns out to be administratively solvent for pre- and postconversion professionals it may be unnecessary for the Court to decide what kind of retainer was intended. Therefore, the Court at this time will not decide the nature of the retainer.

## CONCLUSION

For the foregoing reasons, the Court concludes that the D&A Fee Application will be regarded as an interim fee application until the case has been fully administered or evaluated by the chapter 7 trustee pursuant to § 726. On an interim basis, D&A is awarded $15,000 in fees and expenses and is permitted to apply the $15,000 it holds in its trust account for this purpose.

**IT IS SO ORDERED.**

DATED:    August 18, 2008
          New York, New York

                                                    **/s/ Martin Glenn**
                                                        MARTIN GLENN
                                                    United States Bankruptcy Judge

14